UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
1077 MADISON STREET, LLC,

                           Plaintiff,

          -against-

DONOVAN MARCH, LEAFORD DANIELS, MYRTLE G.
DANELS, MARY R. CARTER, CITY OF NEW YORK
ENVIRONMENTAL CONTROL BOARD, CITY OF
NEW YORK PARKING VIOLATIONS BUREAU,
JOHN AND/OR JANE DOE NO. 1 to JOHN AND/OR
JANE DOE NO. 10,

                        Defendants.
------------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM &
ORDER**
14-CV-4253 (JMA)(PK)

**FILED
CLERK**

3/31/2017 4:40 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

APPEARANCES:

    Craig Stuart Lanza
    145 West 12th Street, 4-1
    New York, NY 10011
        *Attorney for Plaintiff*

    Craig K. Tyson
    Law Office of Craig K. Tyson
    290 Broadway, Suite 800
    New York, NY 10007
        *Attorney for Defendant Donovan March*

**AZRACK, United States District Judge:**

      Before the Court is plaintiff 1077 Madison Street, LLC's motion to confirm the Referee's Report dated February 19, 2016. Plaintiff also moves for judgment of foreclosure and sale on the real property located at 99-05 194th Street, Hollis, New York 11423 (the "Property"). Defendant Donovan March objects[1], arguing, inter alia, (1) that he was denied notice of and opportunity to be heard on the Referee's Report and (2) that the Report improperly computed the amount owed to plaintiff on the note and mortgage outstanding on the Property. For the reasons that follow, the

---

[1] None of the other defendants in the action have appeared or opposed the pending motion.

1

Court confirms the Referee's findings regarding the amount owed on the note and mortgage. The Court, however, declines to adopt the Referee's findings regarding legal fees owed and strikes that portion of the Referee's Report. Accordingly, plaintiffs are owed $584,715.05. Plaintiff is directed to submit a revised proposed judgment of foreclosure and sale in accordance with this Order.

## I. BACKGROUND

The Court assumes familiarity with the facts and underlying proceedings as detailed in the Honorable John Gleeson's Amended Memorandum and Order dated October 26, 2015. (ECF No. 29.) Accordingly, the Court only recounts the proceedings subsequent to the grant of summary judgment.

On August 28, 2015, by Memorandum and Order, Judge Gleeson granted summary judgment to plaintiff, finding that the undisputed facts showed that March had defaulted on the note and mortgage at issue on February 1, 2008. On September 11, 2015, March moved for reconsideration of that order. On October 26, 2015, Judge Gleeson amended his summary judgment order to correct two clerical errors. On November 6, 2015, Judge Gleeson denied the motion for reconsideration on the grounds that all of March's arguments lacked merit.

On December 1, 2015, Judge Gleeson and Magistrate Judge Peggy Kuo jointly appointed the Honorable William C. Thompson as Referee to ascertain and compute the amount due to plaintiff on the note and mortgage. The Referee was also tasked with determining whether the Property could be sold in one parcel.

It appears that plaintiff's counsel met with Referee Thompson on the morning of February 18, 2016, and gave the Referee a declaration supporting the amount plaintiff claimed was due.

2

Rather than proposing hearing dates, the Referee gave plaintiff's counsel an executed Referee's Oath and Report. (Referee's Report, Lanza Aff. Ex. B, ECF No. 44-3.)

In his Report, Referee Thompson found that the amount due to plaintiff on the note and mortgage was $596,715.05 through and including January 15, 2016. (Id. at 5.) The Referee determined that the sum due and unpaid on the mortgage was $200,979.05. (Id.) He also found that interest owed on the mortgage from February 1, 2008 through January 15, 2016 was $383,736.00, calculated at the default interest rate of 24% per annum. (Id.) He further calculated that the default interest per diem owed from January 15, 2016, to the date of judgment was $133.99. (Id.)

Additionally, Referee Thompson found that plaintiffs were owed $12,000.00 in legal fees and reported that the mortgaged premises should be sold in one parcel. (Id. at 3, 5.)

On the afternoon of February 18, 2016, the parties appeared at a status conference before Magistrate Judge Kuo. At the conference, March's counsel indicated that he disputed the Referee's findings regarding the date of default and intended to ask the Referee to reconsider his findings in light of the fact that March did not receive an opportunity to be heard before the Referee submitted the Report. Plaintiff agreed to wait to file an application asking the Court to confirm the Referee's Report until March had an opportunity to raise his request to the Referee.

On March 10, 2016, while March was corresponding with the Referee, this case was reassigned to the undersigned.

On March 18, 2016, March moved this Court for a hearing before the Referee. It appears from his motion papers that March's counsel wrote to Referee Thompson asking him to reconsider the Report on February 23, 2016. (Letter from Tyson to Thompson dated February 23, 2016, ECF No. 41-2.) March's counsel also advised Referee Thompson that there was a dispute regarding

3

March's default date, which necessitated a live hearing with testimony and an opportunity to submit documentary evidence. (Id.) March's counsel further reported that, in response, Referee Thompson directed him to make his request for reconsideration to this Court. March, however, did not provide any correspondence from Referee Thompson memorializing this suggestion. Plaintiff opposed March's motion, disputing March's characterization of the Referee's response and arguing that Referee Thompson had explicitly declined to hold a hearing. (Pl.'s Opp'n to Motion for Hearing, ECF No. 42.) On April 19, 2016, Magistrate Judge Kuo denied March's motion for a hearing. She advised the parties that plaintiff was required to make a motion to confirm the Referee's Report and that March could make any objections to the Report in his opposition to that motion.

Currently pending before the Court is plaintiff's motion to confirm the Referee's Report and for judgment of foreclosure and sale on the Property. Defendant March opposed the motion and raised several objections, including his objection to the absence of a hearing.

## II.  DISCUSSION

### A.  Standard for Confirming the Referee's Report

A district court should confirm a referee's report where its findings are "substantially supported" by the record. Kaplan v. Einy, 618 N.Y.S.2d 777, 780 (App. Div. 1st Dep't 1994). "Generally, New York courts will look with favor upon a Referee's report, inasmuch as the Referee, as trier of fact, is considered to be in the best position to determine the issues presented." Namer v. 152–54–56 W. 15th St. Realty Corp., 485 N.Y.S.2d 1013 (App. Div. 1st Dep't 1985). A referee's report may be based solely on documentary evidence and sworn affidavits. RCB Equities No. 3, LLC v. Skyline Woods Realty, LLC, No. 10-CV-1182, 2013 WL 935785, at *2 (N.D.N.Y.

Mar. 11, 2013) (collecting New York cases). In other words, a referee may, but need not, hold a hearing to admit oral and documentary evidence before submitting his or her report. Id.

**B. Defendant March's Objections**

March raises several objections to the Referee's Report, arguing that the Report is deficient and should not be confirmed because: (1) the Report was entered without notice to March or an opportunity for him to be heard; (2) the Report incorrectly concluded that March defaulted on the note and mortgage on February 1, 2008; (3) the interest rate used to calculate default interest is usurious; (4) default interest should have been calculated from the date the note was accelerated, not the initial default date; (5) plaintiff did not have standing to foreclose on the mortgage; (6) the Report was drafted by plaintiff and signed by the referee, rather than authored by the referee, himself; (7) the Report says the Property "should" be sold in one parcel, rather than stating that the Property "could" be sold in one parcel; (8) the Property is residential, not commercial or mixed-use; (9) the Report does not account for escrow payments; and (10) the Report does not account for the adjustable rate of the mortgage. March also argues that the calculation of legal fees in the Report is not supported by substantial evidence.

The Court addresses each objection in turn.

**1. Notice and An Opportunity to Be Heard**

March argues that the Court should decline to adopt the Referee's Report because it was executed without providing notice to March and without providing March with an opportunity to be heard. In particular, March requests a live hearing wherein he will present testimony and documents to undermine the finding that he defaulted on the note and mortgage on February 1, 2008. In support, March attaches an affidavit from non-party Michelle Pilgrim, who claims to

5

manage the Property, and documents from Flushing Savings Bank (or its servicer) that allegedly show mortgage payments made through 2013.

The failure to provide notice to a defendant or to conduct a hearing requested by a defendant may, in some circumstances, lead a court to decline to confirm a referee's report. See Embanque Capital Corp. v. Geathers, 637 N.Y.S.2d 413, 414 (App. Div. 1st Dep't 1996). Such action, however, is not warranted where failure to hold the requested hearing was harmless. See Chemical Mortg. Co. v. Collier, 642 N.Y.S.2d 519 (App. Div. 1st Dep't 1996).

March contends that at a hearing before the Referee he would dispute the date of his default on the note and mortgage. The default date, however, was determined by Judge Gleeson at summary judgment, not by the Referee. In its motion for summary judgment, plaintiff argued that March defaulted on February 1, 2008. Plaintiff submitted a sworn affidavit to that effect. (ECF No. 21-3.) At summary judgment, March had the opportunity to dispute the date of default. For instance, March could have attached, to his papers opposing summary judgment, the very statements from Flushing Savings Bank and the affidavit from Pilgrim he now claims he wanted to introduce at a hearing before the Referee. However, March failed to submit this evidence at summary judgment. (See ECF No. 22.) Based on the evidentiary record then before him, Judge Gleeson found that the unrefuted evidence established that March defaulted on the note and mortgage on February 1, 2008. (Amended Memorandum and Order dated October 26, 2015, at 4.)

If March wished to dispute the default date as determined at summary judgment, he could have filed a motion, pursuant to Federal Rule of Civil Procedure 59, asking Judge Gleeson to reconsider his findings at summary judgment. The Court notes that March did, in fact, file such a motion on September 11, 2015. March, once again, failed to argue that he had continued to make

6

mortgage payments through 2013, and Judge Gleeson ultimately denied this motion as meritless. (ECF No. 27.)

In light of the above, the Court concludes that the date of default is a settled question that was decided by Judge Gleeson at summary judgment. March could not have contested the date of default before the Referee, who was bound by Judge Gleeson's determination at summary judgment.[2] Accordingly, the Court determines that a hearing before the Referee to dispute the date of default would be futile. Thus, failure to hold such a hearing, does not provide sufficient grounds for the Court to reject the Referee's Report.

**2. Default Date**

March also argues that the Referee's Report should not be confirmed because there was no evidence before the Referee establishing that he defaulted on February 1, 2008. Again, March claims that he possesses documentary evidence, which shows that he continued to make payments after February 1, 2008.

Again, this argument seeks to relitigate the default date, which Judge Gleeson found to be undisputed in his summary judgment order. Accordingly, the Court overrules this objection.

**3. New York's Usury Laws**

Next, March argues that the Referee's Report should not be confirmed because it relied on a default interest rate of 24% per annum, a rate that March contends is usurious.

"Parties are free to agree that a contract rate of interest shall increase upon default, so long as an interest rate is not usurious or does not constitute a penalty." Emigrant Funding Corp. v. 7021 LLC, 901 N.Y.S.2d 906, at *3 (Sup. Ct. Queens Cty. 2009). In support of his objection,

---

[2] Notably, March fails to provide any authority to support the proposition that a referee tasked with calculating the amount due on a note and mortgage could possibly overrule a default date found by a district court judge to be undisputed at summary judgment.

7

March cites New York General Obligations Law §§ 5-505, 5-511 and New York Banking Law § 14-a, which cap interest rates at 16% per annum. It is, however, well-established that this usury cap does not apply to defaulted obligations. Madden v. Midland Funding, LLC, -- F. Supp. 3d --, 2017 WL 758518, at *3 (S.D.N.Y. Feb. 27, 2017) (citing Manfra, Todella & Brookes, Inc. v. Bunge, 794 F.2d 61, 63 n.2 (2d Cir. 1986)). In fact, at least one New York court has upheld a default interest rate of 24% per annum. See Emigrant Funding Corp., 901 N.Y.S.2d at *4.

Accordingly, the Court finds that the 24% per annum default interest rate is not usurious and declines to reject the Referee's Report on this ground.

### 4. Default Interest Prior to Acceleration

March argues that the Referee erroneously determined the amount of default interest owed. According to March, the Referee erred by calculating default interest from February 1, 2008, the date of default, rather than from April 4, 2014, the date the debt was accelerated.

Where loan documents provide that a default interest rate is only triggered by acceleration, the default interest rate only applies after a lender exercises its option to accelerate. See In re Crystal Properties, Ltd., 268 F.3d 743, 748–49 (9th Cir. 2002) (requiring acceleration before applying default interest rate where notes provided that if the option to accelerate was exercised, the amount due would "thereafter bear interest . . . at the increased rate"). Loan documents, however, may permit a lender to charge interest at an increased rate upon the occurrence of any default. In re PCH Assocs., 122 B.R. 181, 187 (Bankr. S.D.N.Y. 1990). If the loan documents so provide, the default interest rate may apply even before a lender exercises its option to accelerate. Id.

March argues that the loan documents here require acceleration before the default interest rate applies. March relies on a provision in the note, which states: "After any stated or accelerated

8

maturity hereof, the Loan shall bear interest payable on demand, at the default rate (the "Default Rate") set forth in the mortgage of even date herewith . . . until the unpaid balance of principal and interest shall have been paid in full . . . ."  (ECF No. 45-10 at ¶ 10.)

March, however, ignores the very next sentence of the note and another, related, provision included in the mortgage itself.  The following sentence of the note provides: "Notwithstanding anything to the contrary contained here, the Lender shall be entitled to interest at the Default Rate (i) in the event of a default by the Maker under the mortgage or this Note, from the time of said default to the sale of the premises following foreclosure . . . ."  (ECF No. 45-10 at ¶ 10.)  This clause expands application of the default interest rate to circumstances beyond that described in the provision of the note that March cites.  That provision, in the context of the entire note, cannot be read to mean that application of the default interest rate is only permitted after acceleration.

Moreover, the following provision in the mortgage itself reflects this more expansive interpretation by recognizing that multiple events can trigger the default interest rate:  "Upon the occurrence of any default hereunder, the note and all other sums secured hereby shall bear interest at the Default Rate."  (ECF No. 21-4 at ¶ 35.)

In light of the analysis above, March's reliance on In re Crystal Properties, Ltd. is misplaced.  Unlike the notes in In re Crystal Properties, Ltd., the note here does not contain narrowing language that requires acceleration before application of the default rate.  Compare In re Crystal Properties, Ltd., 268 F.3d at 748 ("Should default be made in any payment provided for in this note, . . . at the option of the holder hereof and without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall become immediately due and payable, and thereafter bear interest, . . .") with ECF No. 45-10 at ¶ 35 ("Upon the occurrence of any default hereunder, the note and all other sums secured hereby shall bear interest at the Default

9

Rate."). Put another way, the language in the note before the Court does not foreclose the possibility that other events, in addition to acceleration of the debt, could trigger the default interest rate.

Because the express terms of the note and mortgage permit application of the default interest rate from the date of default, the Referee correctly calculated interest at the higher default rate from February 1, 2008. The Court overrules this objection.

**5. The Assignment of the Note and Mortgage to Plaintiff**

March contends that plaintiff did not have standing to foreclose on the Property because there was a defect in the chain of assignments by which plaintiff came to hold the note and mortgage. This argument, however, was explicitly considered and rejected by Judge Gleeson at summary judgment. (ECF No. 29 at 5.) It was also raised again and rejected again when March moved for reconsideration. (ECF No. 27.) Defendant's desire to relitigate this issue for the third time cannot serve as grounds to reject the Referee's Report.

**6. Defendant's Remaining Objections**

The Court has reviewed March's objections regarding authorship of the Report and the use of the word "should" and finds them to be utterly without merit. Additionally, the Court fails to see, and March fails to explain, what bearing, if any, characterization of the mortgage as residential, commercial, or mixed-use would have on the Referee's computations. The Court also does not see, and March does not address, what effect the fact that March's mortgage was negotiated as an adjustable rate mortgage would have on the Referee's Report, which correctly calculates interest at the default rate.

Finally, March asserts that the Report failed to take into account Marsh's escrow payments. In his own words: "Schedule 'B', the statement of computations in the Report of Referee to

Compute in plaintiff's motion, does not give defendant Donovan March credit for his escrow balance. The escrow payments are used to pay for building insurance and real estate taxes." (Tyson Decl. ¶ 16, ECF No. 45.)  Critically, March does not attempt to explain what effect his alleged escrow balance would have on the Report's calculation.  Moreover, he does not even identify what the alleged escrow balance is.

Accordingly, these objections are overruled.

**7. Legal Fees**

March also argues that the Court should reject the Referee's Report because there is no basis in the record for plaintiff's claim for $12,000 in legal fees.  The Court agrees that there is no basis for an award of legal fees.  The Court, however, will not reject the entire Report on this basis.

The Court has reviewed the Referee's Report, which includes a list of documentary evidence considered by the Referee. (ECF No. 44-3.)  The Court has also reviewed the underlying evidence that was presented to the Referee.  (Id.)  That record does not contain any itemized bill for legal services rendered.  Without such evidence, the Court cannot say that the amount of legal fees listed in the Report is substantially supported by the record.  However, rather than reject the entire Report, the Court strikes the portion of the Report regarding the amount of legal fees owed.  This means that plaintiff is owed only what is unpaid on the note's outstanding principal and default interest—$584,715.05 plus $133.99 per diem from January 15, 2016 to the date of judgment.

Accordingly, the Court confirms the Referee's Report's findings regarding principal, default interest, and per diem interest owed on the note and mortgage.  The Court, however, strikes the portion of the Report concerning legal fees as unsupported by the record.

### III.  CONCLUSION

For the reasons stated above, the Court confirms the Referee's Report's findings regarding principal and default interest owed on the note and mortgage.  The Court, however, strikes the portion of the Report concerning legal fees.  Accordingly, plaintiff is owed $584,715.05 plus $133.99 in per diem interest from January 15, 2016 to the date of judgment.

Plaintiff is directed to submit a revised proposed judgment of foreclosure and sale of the Property in accordance with this Order.

**SO ORDERED.**

Dated:  March 31, 2017
       Central Islip, New York

    __/s/ JMA_____
    Joan M. Azrack
    United States District Judge